IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AUSTIN RAY COLSON, | § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:23-CV-450-RP |
| CITY OF SAN MARCOS, TEXAS, et al., | | |
| Defendants. | | |

**ORDER**

Before the Court is Defendant City of San Marcos, Texas's (the "City") Motion to Dismiss, (Dkt. 4); Plaintiff Austin Ray Colson's ("Colson") response, (Dkt. 7); the City's reply, (Dkt. 8); Colson's supplemental brief, (Dkt. 10); and the City's supplemental brief, (Dkt. 11). Having reviewed the briefing, the record, and relevant law, the Court will grant the City's motion to dismiss.

**I. BACKGROUND**

On October 4, 2021, Colson was pulled over in an area north of Houston, Texas by the Montgomery County Sheriff's Department for a traffic violation while on his way home from work. (Compl., Dkt. 1, at 3). During the traffic stop, a sheriff's deputy informed Colson that he had an outstanding warrant for his arrest out of San Marcos—which is south of Austin in Hays County— for a Class A misdemeanor assault. (*Id.*). Colson told the deputy he had never been to San Marcos. (*Id.*). Despite Colson's statement, he was arrested and jailed in Montgomery County. (*Id.*). The next day, Colson's father, Tim Stewart ("Stewart"), went to the Montgomery County Jail to post the bond and have Colson released. (*Id.*).

After his release, Colson and Stewart began investigating the circumstances of the criminal case that led to Colson's arrest. (*Id.* at 4). After getting a copy of an arrest report, they learned that on June 29, 2021, Officer Kyle Lobo ("Officer Lobo") of the San Marcos Police Department ("San

Marcos Police") responded to 911 calls about an assault happening at a local bar. (*Id.*). When he arrived, Officer Lobo was directed to the restroom, where he found the victim, Miles Koch ("Koch"), "drenched in his own blood" with multiple injuries to his head and body. (*Id.*).

According to Koch, the assault began after he confronted a man named Cole Waller ("Waller"), who was kicking Koch's truck outside the bar. (*Id.*). Waller immediately started throwing punches, Koch "bear hugged" Waller, and both men fell to the ground. (*Id.*). As they struggled, three unidentified "generic looking [white male] college kids" joined the assault and started beating Koch. (*Id.*). The three unidentified assailants fled the scene, but Waller was arrested. (*Id.*). Officer Lobo concluded his investigation that evening by noting: "No individual identifiers [for the assault suspects] were gathered at the time of the report. Nor were there any other persons identified as witnesses." (*Id.* at 5).

The next day, Koch called Officer Lobo and claimed that "he had identified one of the males … as Austin Colson by looking through Cole Waller's Instagram account." (*Id.*). Officer Lobo then contacted Texas State University and received verification that Colson was an enrolled student there. (*Id.*). However, this information was inaccurate, as Colson was a student at Sam Houston State University at the time and had never been a student at Texas State University. (*Id.* at 7). When Officer Lobo contacted Texas State University, the person on the phone had misunderstood Officer Lobo and ran a search for "Austin Cole," instead of "Austin Colson." (*Id.* at 7–8). Officer Lobo then used this information from Texas State University—which was incorrect—and Koch's identification of Colson from Instagram to draft the affidavit that secured the arrest warrant. (*Id.*).

Several days after Colson's arrest, Stewart presented the evidence of Colson's enrollment at Sam Houston State University to the Hays County District Attorney's Office ("DA's Office") to exonerate Colson. (*Id.*). Stewart did not receive any response from the DA's Office. (*Id.*). Colson admitted that he knew Waller from grammar school, but he had no knowledge of Waller's

2

whereabouts at the time of the alleged assault. (*Id.* at 5–6). Around the same time, an investigator for the DA's Office independently determined that Colson was not one of the unknown assailants and presented that information to Assistant District Attorney Rebecca Lopez. (*Id.* at 6).

After more failed attempts to contact the DA's Office and discussions with an unknown representative of the San Marcos Police, Stewart received a telephone call from Officer Lobo. (*Id.*). Officer Lobo stated that a bystander, who witnessed the assault, saw a photo of Colson on Waller's social media, believed that Colson looked like one of the unidentified assailants, and contacted the San Marcos Police. (*Id.*). Stewart questioned Officer Lobo about his investigation tactics, to which Officer Lobo responded, "We do it (this) way all of the time." (*Id.* at 7).

A few weeks later, Colson and Stewart filed a formal complaint with the Chief of the San Marcos Police. (*Id.*). The next day, Stewart received a phone call from San Marcos Police Night Shift Commander Tiffany Williams ("Commander Williams"). (*Id.*). Commander Williams stated that she was recording the call and would provide Stewart a copy of the recording, an offer she later retracted. (*Id.*). During the call, Commander Williams said Koch had looked at social media and concluded that Colson was one of the unidentified assailants. (*Id.* 7–8). However, she also revealed that she was "pretty sure" that Colson was not involved in the assault. (*Id.* at 8). The following day, Commander Williams called Stewart and notified him that she had sent an email to the DA's Office requesting that they drop the charges against Colson. (*Id.*).

Colson and Stewart were later able to identify someone they believed to be the true assailant and presented this information to Commander Williams. (*Id.*). Commander Williams informed them that the San Marcos Police were no longer investigating misdemeanors and, as a result, would not seek to investigate that person's culpability in Koch's assault. (*Id.*).

On April 20, 2023, Colson filed this lawsuit against the City and other defendants, asserting a single claim against the City for failure to train under 42 U.S.C. § 1983. (*Id.* at 10–12). The City filed

a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, Dkt. 4). Colson did not timely respond, and the Court issued an order to show cause as to why the Court should not grant the City's motion or, alternatively, ordered Colson to file a response to the motion to dismiss. (Dkt. 6). Colson then filed a response to the motion. (Dkt. 7). The City then replied. (Dkt. 8). After the Court ordered supplemental briefing, (Dkt. 9), Colson and the City filed supplemental briefs, (Dkts. 10, 11).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Municipal Liability Under Section 1983 for Failure to Train

While municipalities can be sued directly under Section 1983, *Monell*[1] establishes that they cannot be found liable on a theory of vicarious liability or respondeat superior. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019). "In other words, 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability.'" *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

To prevail on a failure-to-train theory under *Monell,* a plaintiff "must demonstrate (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). There are two means of proving deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 386-92 (1989)). In the proof-by-pattern

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

method, deliberate indifference can be found if municipal employees violate constitutional rights so often that it can be inferred from the pattern of violations that the need for further training must have been plainly obvious to the responsible policymakers. *Id.* A plaintiff must demonstrate "at least a pattern of similar incidents" to establish municipal liability under this method. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (internal citations omitted). Alternatively, under the single-incident exception, deliberate indifference may be found through a single incident if a plaintiff can prove that the highly predictable consequence of a failure to train would have resulted in the specific injury suffered. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Courts should treat failure to train claims with a high degree of caution. "A municipality's culpability for a deprivation of right is at its most tenuous where the claim turns upon a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

### B. Colson's Allegations Fail to State a Claim

In his complaint, Colson claims that the City failed to "train its police officers and specifically, Officer Lobo, on how to properly conduct a criminal investigation, conduct a proper identification line up, and process a criminal case." (Compl., Dkt. 1, at 10). Colson alleges that the City's failure to train "amounts to deliberate indifference to the rights of individuals subjected to criminal investigation—to include Plaintiff—because the potential for Fourth Amendment violations was obvious and highly predictable." (*Id.* at 11). Although Colson asserts the City did not have a policy to properly train its officers, he also alleges that even if there was such a policy, "the San Marcos Police Department nevertheless did nothing to ensure the policy was followed by its officers." (*Id.*).

Even if the Court were to find Colson's allegations sufficient to satisfy the other two elements of a failure-to-train claim, Colson has not pled sufficient facts to state a claim for deliberate indifference. First, Colson's failure-to-train allegations lack factual support and are conclusory.

Without explanation, Colson alleges the City's policies did not include training police on how to "properly" conduct a criminal investigation, conduct a proper identification line up, and process a criminal case. He does not identify how the training programs may have been insufficient nor does he explain what would constitute proper training. Second, Colson does not allege previous similar violations or suggest that what allegedly happened with Colson's investigation was a part of a pattern of incidents or that the City knew of the alleged pattern of failures sufficient to plead a claim for deliberate indifference under the proof-by-pattern method. *See Zarnow*, 614 F.3d at 170.

Colson also fails to allege that Officer Lobo's actions alone were sufficient to render the City liable for deliberate indifference under a failure-to-train claim. In rare circumstances, a single unconstitutional action may be sufficient to impose municipal liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question. *Webb*, 925 F.3d at 215; *Davidson*, 848 F.3d at 395; *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). The single-incident exception is "extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). "When a final policy maker makes the relevant decision, and when that decision is within the sphere of the policy maker's final authority, the existence of a well-established, officially-adopted policy will not insulate the municipality from liability." *Bennett*, 74 F.3d at 586 (internal quotation marks omitted). Whether a particular official has final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1986).

To the extent Colson alleges that Officer Lobo's conduct demonstrates deliberate indifference, his allegations are still insufficient. The fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390; *see also Farmer v. Brennan*, 511 U.S. 825 (1994) "[P]roof of a single instance, rather

7

than a pattern of similar violations normally will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of her constitutional rights." *See Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 286-87 (5th Cir. 2002). Rather, a plaintiff must prove that the highly predictable consequence of a failure to train would have resulted in the specific injury suffered. *Sanders-Burns*, 594 F.3d at 381. Colson has not done so. Having failed to show deliberate indifference under either method, Colson's failure-to-train claim against the City must be dismissed.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the City's motion to dismiss, (Dkt. 4), is **GRANTED**.

**IT IS FURTHER ORDERED** that Colson show cause **on or before March 29, 2024** why his claims against the remaining defendants—Chief Police Stan Standridge, Officer Kyle Lobo, Commander Tiffany Williams, John and Jane Doe Supervisors (A-Z), and John and Jane Doe Officers (A-Z)—should not be dismissed for failure to timely serve.

**SIGNED** on March 18, 2024

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

8